# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

CIV-15-737-D

LORAINE HOWARD,
Plaintiff,
v.

BALON CORPORATION,
Defendant.

## DEFENDANT BALON CORPORATION'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

The Honorable Timothy D. DeGiusti

JEFFERSON I. RUST, OBA #167222
KELLY J. KRESS, OBA #30771
TOMLINSON · RUST · MCKINSTRY · GRABLE
Two Leadership Square, Suite 450
211 North Robinson Avenue
Oklahoma City, Oklahoma  73102
Telephone:  (405) 606-3350
Facsimile:  (866) 633-6162
jeffr@trmglaw.com
kellyk@trmglaw.com
*Attorneys for Defendant, Balon Corporation*

**March 18, 2016**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. iii

STATEMENT OF THE CASE ............................................................................ 1

UNDISPUTED MATERIAL FACTS ................................................................. 2

ARGUMENTS AND AUTHORITIES .............................................................. 10

    I.      STANDARD OF REVIEW ................................................................. 10

    II.    ACTIONABLE CLAIMS UNDER THE FMLA .............................. 10

    III.   PLAINTIFF CANNOT ESTABLISH AN ACTIONABLE FMLA
           INTERFERENCE CLAIM ................................................................. 11

          A. Interference Claim Burden of Proof ............................................ 11
          B. Termination Unrelated to Any Exercise of FMLA Rights Does
             Not Constitute Interference ......................................................... 12
          C. Plaintiff's Termination Was Unrelated to Any Exercise of FMLA
             Rights ........................................................................................... 14

    IV.   PLAINTIFF CANNOT ESTABLISH AN ACTIONABLE FMLA
           RETALIATION CLAIM ..................................................................... 17

          A. Retaliation Claim Burden of Proof .............................................. 17
          B. Plaintiff Had Not Engaged in Protected Activity When
             Defendant Made the Decision to Terminate Her Employment .................. 18
          C. Plaintiff Cannot Establish a Casual Connection Between Her
             Exercise of FMLA Rights and Her Termination ........................ 20
          D. Defendant Has Asserted a Non-Discriminatory Reason for
             Plaintiff's Termination and She Cannot Establish Pretext .......... 21

CONCLUSION .................................................................................................. 24

CERTIFICATE OF SERVICE .......................................................................... 25

# TABLE OF AUTHORITIES

*Allen v. Muskogee, Okla.,*
119 F.3d 837, 846 (10th Cir.1997) ...................................................................... 10

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ............................................ 10

*Annett v. University of Kan.,*
371 F.3d 1233, 1241 (10th Cir. 2004) .................................................................. 22

*Argo v. Blue Cross and Blue Shield of Kansas, Inc.,*
452 F.3d 1193, 1202 (10th Cir. 2006) .................................................................. 18

*Berry v. T-Mobile USA, Inc.,*
490 F.3d 1211, 1220 (10th Cir. 2007) .................................................................. 22

*Bones v. Honeywell Int'l, Inc.,*
366 F.3d 869, 877 (10th Cir. 2004) ........................................................... 12, 13, 16
366 F.3d at 878 ..................................................................................... 13, 14

*Campbell v. Gambro Healthcare, Inc.,*
478 F.3d 1282, 1287 (10th Cir. 2007) .................................................................. 11

*Cone v. Longmont United Hosp. Ass'n,*
14 F.3d 526, 528 (10th Cir. 1994) ...................................................................... 10

*Dalpiaz v. Carbon County, Utah,*
760 F.3d 1126, 1132 (10th Cir. 2014) .................................................................. 11

*Doebele v. Sprint/United Mgmt. Co.,*
342 F.3d 1117, 1135 (10th Cir. 2003) .................................................................. 17

*Etsitty v. Utah Transit Auth.,*
502 F.3d 1215, 1225 (10th Cir. 2007) .................................................................. 22

*Gunnell v. Utah Valley State College,*
152 F.3d 1253, 1262 (10th Cir. 1998) ............................................................. 13, 17
152 F.3d at 1263 ..................................................................................... 18

*McBride v. CITGO Petroleum Corp.,*
281 F.3d 1099, 1108 (10th Cir. 2002) .................................................................. 12

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) .................................... 11, 17

*Metzler v. Federal Home Loan Bank of Topeka,*
464 F.3d 1164, 1170 (10th Cir. 2006) ...................................................................... 10, 17
464 F.3d at 1070 ................................................................................................................ 11
464 F.3d at 1180 ................................................................................................ 11, 12, 20
464 F.3d at 1171 ...................................................................................................... 18, 20
464 F.3d at 1172 ...................................................................................................... 21, 22

*Morgan v. Hilti, Inc.,*
108 F.3d 1319, 1323 (10th Cir. 1997) ............................................................................... 22

*Ney v. City of Hoisington, Kansas,*
264 F. App'x 678, 682 (10th Cir. 2008) ..................................................................... 18, 19

*Olson v. General Elec. Astrospace,*
101 F.3d 947, 951-52 (3rd Cir. 1996) ............................................................................... 22

*Peterson v. Exide Technologies,*
477 F. App'x 474, 477 (10th Cir. 2012) (unpublished) ..................................................... 21

*Phillips v. Calhoun,*
956 F.2d 949, 951 n. 3 (10th Cir.1992) ............................................................................. 10

*Rice v. United States,*
166 F.3d 1088, 1092 (10th Cir.1999) ................................................................................ 10

*Sabourin v. University of Utah,*
676 F.3d 950 (10th Cir. 2012) ........................................................................................... 20
676 F.3d at 959 ................................................................................................................... 20
676 F.3d at 962 ............................................................................................................ 20, 21

*Smith v. Diffee Ford-Lincoln-Mercury, Inc.,*
298 F.3d 955, 960 (10th Cir. 2002) ................................................................................... 10
298 F.3d at 960 ................................................................................................................... 11
298 F.3d at 961 ................................................................................................................... 12
298 F.3d at 963 ................................................................................................................... 12

*Spoon v. Gabriel Ride Control Products, Inc.,*
2005 WL 1827909 (W.D. Okla. Aug. 2, 2005) ........................................................... 14, 16
*Id.* at *4 ............................................................................................................................ 14

iv

## <u>STATUTES</u>

Family and Medical Leave Act ("FMLA")
29 U.S.C. §§ 2601 *et seq.* ................................................................................................. 1
§ 2615(a)(1) ............................................................................................................. 11, 12
§ 2615(a)(2) ................................................................................................................... 11

29 C.F.R. § 825.216(a) .......................................................................................... 13, 17
§ 825.302(c) ................................................................................................................... 18

## DEFENDANT BALON CORPORATION'S
## MOTION FOR SUMMARY JUDGMENT

Defendant, Balon Corporation ("Defendant" or "Balon"), respectfully submits the following Motion for Summary Judgment as to claims asserted by Plaintiff, Loraine Howard ("Plaintiff" or "Howard"), for interference and retaliation under the Family and Medical Leave Act ("FMLA" or the "Act"), 29 U.S.C. §§ 2601 *et seq.* As established below, Plaintiff cannot establish actionable claims for interference or retaliation because she was terminated for reasons completely unrelated to her potential need for FMLA leave. The undisputed material facts establish that Defendant made the decision to terminate Plaintiff's employment **before** Plaintiff had a possible need for leave under the Act. Accordingly, summary judgment in favor of Defendant is warranted.

## STATEMENT OF THE CASE

Plaintiff was employed as a Machine Operator at Balon's Oklahoma City, Oklahoma valve manufacturing facility from May 2008 through March 2015. Plaintiff's personnel file reflects repeated counseling sessions and warnings for poor performance in the areas of productivity and attendance. This pattern culminated in a final counseling session with Plaintiff on February 6, 2015, where she was specifically advised that her performance would be re-evaluated in the near future and that she must improve her productivity and attendance. During the next six (6) weeks, Plaintiff incurred four (4) additional unexcused absences and left work early on three (3) occasions.

At a regularly-scheduled Human Resources meeting held on Monday, March 23, 2015, Plaintiff's personnel file was reviewed by Balon's ownership. Because Plaintiff's

1

file reflected a history of productivity and attendance problems and no improvement following the February 6th counseling, Balon's owners made the decision to terminate Plaintiff's employment and instructed Holly Siderits, a Balon HR Representative, to notify Plaintiff of that decision on Tuesday, March 24.  However, Plaintiff called out sick on Tuesday, March 24th and each of the remaining days that week.   Siderits informed Plaintiff of her termination when Plaintiff returned to work on Monday, March 30, 2015.

Plaintiff subsequently filed this lawsuit, alleging the absences she incurred after the March 23rd decision to terminate her employment were potentially covered by the FMLA and therefore shielded her from termination.  Plaintiff now asserts claims for interference and retaliation under the FMLA.  However, the days Plaintiff missed from work after March 23, 2015 are irrelevant and played no role whatsoever in her termination.

Even if Plaintiff's absences on March 24th through March 27th of 2015 qualified for leave, controlling case law clearly establishes the FMLA does not protect Plaintiff from termination for issues that occurred before and that are completely unrelated to an alleged subsequent need or request for leave.

Balon respectfully requests the Court grant summary judgment in its favor and dismiss Plaintiff's FMLA interference and retaliation claims as a matter of law.

## UNDISPUTED MATERIAL FACTS

1.	Balon is a family-owned business operated in Oklahoma City, Oklahoma. Balon was founded in 1965 and manufactures valves for a wide variety of applications in

the oil and gas industry.  Balon currently employs in excess of 900 employees.  (Kyte Affidavit, ¶ 3, Ex. 1).

2.     Plaintiff was hired as a Machine Operator at Balon's Oklahoma City, Oklahoma manufacturing facility on May 28, 2008, and remained in that position throughout her employment.  (Howard depo., 29/7-23, Ex. 2).

3.     At all relevant times, Balon maintained an Employee Guide which contained Balon's Attendance Policy.  Balon's Attendance Policy informed employees to call in and report if they were going to be absent or late and provided a number for employees to call.   This Policy informs employees that "any patterns of excessive attendance/tardy issues will be addressed."  (Employee Guide, Rev. 11/16/2007, p. 15, Ex. 3).

4.     Plaintiff signed an Acknowledgement that she received a copy of the Employee Guide on May 28, 2008.  (Acknowledgement, signed 05/28/08, Ex. 4).  When Plaintiff was hired, Balon representatives went over the Employee Guide with her and were available to answer any questions she had.  (Howard depo., 135/6-24; 142/9-143/14, Ex. 2).

5.     Plaintiff was aware of her obligation to clock in for herself and when to report to work and clock out for the core work hours from 8:00 a.m. to 4:30 p.m. Plaintiff knew to report back on time from her break and lunch periods and was aware of her right to use accrued vacation time to cover her absences.  (Howard depo., 136/11-137/22; 139/19-142/5, Ex. 2).

6.     Under Balon's Vacation Policy, Plaintiff accrued 120 hours of paid vacation annually on her anniversary date.  Accrued vacation time could be used for any reason designated by the employee, as long as the employee meets the policy and calls in ahead of time.  (Siderits depo., 10/13-11/12; 13/1-22, Ex. 5).

7.     At all relevant times, Balon maintained an FMLA Policy which summarized employees' rights under the Act.  Required posters summarizing the FMLA are posted near the Human Resources office in each of the north building and the south building of Defendant's facility.  There is also a summary of FMLA policies and procedures located in a glass-enclosed case in the north building break area.  (Kyte Affidavit, ¶ 4, Ex. 1).

8.     Balon Human Resources Representative, Holly Siderits ("Siderits"), testified that she was familiar with the FMLA and the Company's normal practice is to inquire when an employee is absent for longer than three (3) days and seeking medical treatment or requests FMLA leave to determine whether the employee is eligible under the Act and inform them of their rights.  (Siderits depo., 91/12-92/25; 94/25-95/15; 101/6-21, Ex. 5).

9.     Balon regularly designates absences as protected leave under its FMLA Policy.  Balon's records reflect the following number of employees had absences that Balon designated as FMLA protected leave since January 1, 2013:

| Year | Number of Employees with FMLA Leave |
|------|-------------------------------------|
| 2013 | 61 |
| 2014 | 72 |
| 2015 | 75 |
| 2016 | 22 |

(Kyte Affidavit, ¶ 5, Ex. 1).

10.    On February 6, 2015, Siderits met with Plaintiff to address Plaintiff's concern that she did not receive an increase during the December 2014 reviews.  Siderits explained that Plaintiff had been observed sitting on a parts box by both Siderits and Phil Scaramucci (one of Balon's owners) (and was sitting again when Siderits went to get her for the meeting) and had been seen by several members of the Shared Resources group making frequent trips to the restroom during production hours.  Plaintiff was reminded of Balon's expectation that she should remain actively working during production times. Siderits' notes reflect that Plaintiff agreed with these observations and was embarrassed that she was caught by Phil Scaramucci away from her machine.  Plaintiff was advised that she would be evaluated fairly soon and it was Balon's expectation that Plaintiff's habits improve and that she does not go backwards in her performance.  Plaintiff also was advised that her attendance had become an issue again.  She acknowledged that she was missing work and stated that she was living in her vehicle while she saves money to pay off an outstanding electric bill.  (Howard Activity Report, 02/06/2015 Entry, at p. 4, Ex. 6).

11.    In addition to the February 6th meeting with Siderits, Plaintiff's Employee Activity Report reflects the following counseling notes since January 1, 2013:

- 03/14/2013 Owner, Jay Scaramucci, met with Plaintiff and encouraged her to correct her attendance issues and take advantage of her opportunities with Balon.
- 03/15/2013 Productivity note by Siderits documenting that Jay Scaramucci witnessed Plaintiff in the break area 5 minutes before lunch time.

- 05/16/2013 Productivity note by Siderits documenting that Supervisor, Mikki Carrion, reported that Plaintiff left her work area around 1:00 p.m. was seen coming out of the restroom at 1:30 p.m.  Plaintiff was seen leaving the work area at 3:55 p.m. and returning at 4:12 p.m.
- 06/05/2013 Productivity note by Theresa Bui documenting that Plaintiff was still in the break area putting up her food after 8:00 a.m.
- 06/12/2013 Productivity note by Theresa Bui documenting that Plaintiff was walking in the break area towards the break room in the north building to put up her food at 8:03 a.m.
- 06/26/2013 Note to file by Siderits reflecting that Jay Scaramucci noticed Plaintiff in the north break room with the refrigerator door open and the lights off.  Plaintiff stated that she was running late and getting water.
- 07/01/2013 Note to file by Siderits reflecting a meeting where Plaintiff was advised that she was on a final warning and that she needed to follow company expectations.  Plaintiff was told to get to work on time and stay at her machine.  If she needs to leave her machine, she should alert her supervisor or set up person.  Plaintiff said she understood and was going to focus on taking better care of herself and her job.
- 07/06/2013 Note to file by April McDaniels reflecting that Mikki Carrion talked with Plaintiff about leaving to get her things 5 minutes before the end of the day.  This was the second time Carrion had seen this.  Plaintiff claimed she went to wash her hands.
- 08/26/2013 Productivity note by McDaniels documenting Plaintiff being observed out of her work area talking to co-workers.  Plaintiff's supervisor stated that Plaintiff was supposed to be running her machine.
- 09/13/2013 Productivity note by Siderits observing Plaintiff writing on a scratch pad with her cell phone on her work cart with an electronic book on the screen.  Plaintiff was so engrossed in what she was doing that she did not notice Siderits at her machine.  Plaintiff was told to focus on the machine and the parts.  Plaintiff stated she was sorry and would not do it again.
- 11/18/2013 Productivity note by McDaniels observing Plaintiff washing her hands seventeen minutes before quitting time.
- 11/10/2014 Productivity note by McDaniels documenting that Jay Scaramucci saw Plaintiff going to the restroom 15 minutes before the lunch break.
- 11/11/2014 Note to file reflecting that Rickey O'Neil saw Plaintiff walking from the north building to the south building to go to the restroom around 11:00 a.m.
- 11/14/2014 Productivity note based on McDaniels documenting that Plaintiff was away from her machine at 11:35 a.m.

- 11/17/2014 Productivity note by Siderits observing Plaintiff sitting on a parts box, drinking a soda at 8:50 a.m.  Plaintiff stood up when she saw Siderits.
- 11/19/2014 Productivity note by McDaniels documenting that Plaintiff was away from her machine for several minutes at 11:07 a.m.
- 11/24/2014 Note to file reflecting McDaniels' meeting with Plaintiff who complained that her back was hurting and that is why she was sitting on the box at her machine.  Plaintiff was informed to see the doctor if her back was hurting her.  Plaintiff also claimed that she only goes to the restroom twice a day due to an infection.

(Howard Activity Report, Ex. 6.).

12.    Plaintiff's personnel file reflects the following disciplinary actions taken during her employment with Balon:

- Verbal Warning for Absences, Tardiness, dated 03/23/09;
- Verbal Warning for Productivity, dated 05/04/09;
- Written Warning for Misconduct, dated 06/30/09;
- Verbal Warning for Absences, Tardiness, dated 06/11/2010;
- Written Warning for Productivity, dated 11/05/2010;
- Written Warning for Misconduct, dated 12/12/2011;
- Verbal Warning for Absences, Tardiness, dated 06/22/2012;
- Written Warning for Absences, Tardiness, dated 11/09/2012; and
- Written Warning for Productivity, dated 11/24/2014.

(Howard Documentation of Discussion with Employee forms, Ex. "7").

13.    Plaintiff's Employee Attendance Details reflect the following incidents occurring after the February 6, 2015 counseling session:

- 02/20/15 Absent-called in sick;
- 02/23/15 Absent-personal;
- 02/27/15 Early Out-no reason documented;
- 03/05/15 Absent-no reason documented;
- 03/11/15 Early Out-no reason documented;
- 03/13/15 Absent-no reason documented; and
- 03/18/15 Early Out-no reason documented.

(Howard Employee Attendance Details, at p. 6, Ex. "8").

14.     Although Plaintiff received 120 hours of paid vacation on May 1, 2014 that she could use during the next 12 months, Plaintiff used all of her available vacation hours by July 15, 2014.  Therefore, Plaintiff did not have any vacation time available for any subsequent absences, late arrivals or early departures from work including the instances that occurred after the February 6 meeting Plaintiff had with HR Representative Siderits. (Howard Employee Attendance Details, Ex. "8")

15.     On Monday, March 23, 2015, during a weekly Human Resources/Safety meeting, Siderits brought Plaintiff's personnel file to be reviewed by the owners because six (6) weeks had passed since Siderits' February 6, 2015 meeting with Plaintiff.  The meeting was attended by Siderits; McDaniels; Balon owners Jay and Phil Scaramucci; Balon's Vice President, Corporate Secretary and General Counsel Jay Kyte ("Kyte"); and members of the Safety Team.  Plaintiff's file reflected that she had been counseled on February 6, 2015 and informed that her productivity and attendance needed to improve. Plaintiff's file reflected that since the February 6th meeting, she had four (4) unexcused absences and three (3) early outs.  The owners concluded that Plaintiff failed to make sufficient improvement and made the decision to terminate her employment, pending a review of her file by Kyte.   (Defendant's Response to Plaintiff's First Set of Interrogatories, Response No. 1, at pp. 2-3, Ex. "9"; Siderits depo., 22/3-30/4, Ex. 5).

16.     Following the meeting on March 23, 2015, which concluded around 3:00 p.m., Kyte reviewed Plaintiff's file, made some comparison between documents in the file with the Activity Report and formed an opinion that there was a sufficient legal basis for termination.  Kyte then communicated to Siderits that he had no objection to the

owners' termination decision.   (Kyte depo., 12/7-14/5, Ex. "10"; Siderits depo., 55/1-56/3, Ex. 5).

17.     Siderits prepared a form to terminate Plaintiff on March 24, 2015; however, Plaintiff called in sick that day.  Each day Plaintiff called in, Siderits re-did the form and dated it for the next day.  (Siderits depo., 56/4-25, Ex. 5).

18.     Balon's attendance log for Plaintiff reflects the following:

| Date | Details | Time | Received By |
|------|---------|------|-------------|
| 03/24/2015 | 1 day absent have Dr. Appt. | 7:38:46 | Oneta Sayarath |
| 03/25/2015 | Absent-Sick will bring Dr. note tomorrow. | 05:55:32 | Hop Do |
| 03/26/2015 | Absent-Still sick. | 06:03:55 | Hop Do |
| 03/27/2015 | 1 day absent sick. | 06:27:24 | Oneta Sayarath |

(Plaintiff Attendance Log, Ex. "11").

19.     On Friday, March 27, 2015, Plaintiff's fiancé delivered two doctor's notes to the Balon front reception desk.   One was dated March 24, 2015, and stated that Plaintiff was evaluated that day and was unable to return to work until March 26, 2015. The second was dated March 26, 2015, and stated that Plaintiff was evaluated that day and was unable to return to work until Monday, March 30, 2015.  (Howard depo., 37/18-39/14; Chiropractic Arts Center Notes dated 03/24/2015 and 03/26/2015, Ex. "12").

20.     On Monday, March 30, 2015, Siderits met with Plaintiff and informed her that she was being terminated.  (Siderits depo., 59/4-60/14, Ex. 5).

21.     Siderits waited until March 30, 2015 to notify Plaintiff of her termination so the decision could be communicated face-to-face, which is Siderits' normal practice. (Siderits depo., 50/13-22; 76/2-77/6, Ex. 5).

22.     Kyte and Siderits both testified that they did not see the Chiropractic Arts Center doctor's notes which were delivered by Plaintiff's fiancé on March 27, 2015, until sometime after Plaintiff had been terminated.  (Kyte depo., 14/23-17/1, Ex. "10"; Siderits depo., 53/16-54/16, Ex. 5).

## ARGUMENTS AND AUTHORITIES

### I.     STANDARD OF REVIEW.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 528 (10th Cir. 1994). There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Unsubstantiated allegations carry no probative weight in summary judgment proceedings.  *Phillips v. Calhoun,* 956 F.2d 949, 951 n. 3 (10th Cir.1992).  To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise.  *See Rice v. United States,* 166 F.3d 1088, 1092 (10th Cir.1999); *Allen v. Muskogee, Okla.,* 119 F.3d 837, 846 (10th Cir.1997).

### II.     ACTIONABLE CLAIMS UNDER THE FMLA

The Tenth Circuit recognizes two theories of recovery under the FMLA: (1) an entitlement or interference theory, and (2) a retaliation or discrimination theory. *Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006) (citing *Smith v. Diffee Ford-Lincoln-Mercury, Inc.,* 298 F.3d 955, 960 (10th Cir. 2002)).  The

interference theory arises from Section 2615(a)(1) of the FMLA, which provides: "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter." 29 U.S.C. § 2615(a)(1); *Smith*, 298 F.3d at 960. The retaliation theory arises from Section 2615(a)(2), which provides: "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2); *Smith*, 298 F.3d at 960.

The Tenth Circuit explained that "[t]he distinction between these two theories is important because the elements and burdens of proof that apply to § 2615(a)(1) claims differ from those that apply to § 2615(a)(2) claims." *Metzler*, 464 F.3d at 1070. Accordingly, the two claims must be analyzed separately. *Id.*

## III. PLAINTIFF CANNOT ESTABLISH AN ACTIONABLE FMLA INTERFERENCE CLAIM.

### A. Interference Claim Burden of Proof.

To establish an FMLA interference claim, Plaintiff must show: "(1) that she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights." *Dalpiaz v. Carbon County, Utah*, 760 F.3d 1126, 1132 (10th Cir. 2014) (citing *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007)). "Under this theory, a denial, interference, or restraint of FMLA rights is a violation regardless of the employer's intent, and the *McDonnel Douglas* burden-shifting analysis does *not* apply to interference claims." *Metzler*, 464 F.3d at

11

1180 (citing *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 2004)) (internal citations omitted).

However, the Tenth Circuit emphasized that Section 2615(a)(1) is "not a strict liability statute." *Metzler*, 464 F.3d at 1180. "**[A]n employee may be dismissed, preventing her from exercising her statutory right to FMLA leave [or reinstatement after leave] … if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave**." *Id.* (quoting *Smith*, 298 F.3d at 961) (emphasis added) (alteration in original). In *Smith*, the Tenth Circuit stressed that "a reason for dismissal insufficiently related to FMLA leave will not support recovery under an interference theory." *Smith*, 298 F.3d at 961. The burden to demonstrate that an employee terminated during or prior to taking FMLA leave would have been dismissed regardless of the employee's request for, or taking of, FMLA leave is on the employer. *Metzler*, 464 F.3d at 1180 (citing *Smith*, 298 F.3d at 963).

## B. Termination Unrelated to Any Exercise of FMLA Rights Does Not Constitute Interference.

Courts construing interference claims have made clear that "the FMLA did not extend to employees such additional protections as a ban on dismissal for poor performance or the right to demonstrate improved performance when not ill." *Smith*, 298 F.3d at 961(citing *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1108 (10th Cir. 2002)). The Court also found that an "indirect causal link between the employee's dismissal and FMLA leave (i.e., the fact that they independently resulted from the same cause) to be an inadequate basis for recovery under the FMLA." *Id.* Established

precedent makes clear that "an employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request." *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1262 (10th Cir. 1998) (citing 29 C.F.R. § 825.216(a)).

In *Bones*, the Tenth Circuit affirmed summary judgment for an employer on a plaintiff's FMLA interference claim where the evidence established that the plaintiff would have been dismissed regardless of her request (or need) for an FMLA leave. The employer provided testimony that the plaintiff was dismissed because of her failure to comply with the employer's absence policy, and would have terminated her regardless of her request for a medical leave. *Bones*, 366 F.3d at 878. The Court also found that the plaintiff offered no evidence, aside from her own speculations, that contradicted the employer's testimony. *Id.* The record showed that the plaintiff had a history of tardiness and non-compliance with the employer's absence policy and had been previously given warnings that her failure to notify her supervisors of her absences would lead to her termination. *Id.*

The Court held:

> It is uncontroverted that Bones did not comply with Honeywell's absence policy on the dates for which she was terminated. Bones admits that she never notified [her supervisor] about her absences. Bones was terminated because she did not comply with Honeywell's absence policy; she would have been terminated for doing so irrespective of whether or not these absences were related to a requested medical leave. Bones' request for an FMLA leave does not shelter her from the obligation, which is the same as that of any other Honeywell employee, to comply with Honeywell's employment policies, including its absence policy.

13

*Id.* (internal citation omitted). Concluding that no reasonable juror could find the plaintiff's termination was related to her request for FMLA leave, the Tenth Circuit affirmed summary judgment for the employer. *Id*.

Likewise, in *Spoon v. Gabriel Ride Control Products, Inc.*, 2005 WL 1827909 (W.D. Okla. Aug. 2, 2005) (unpublished), the District Court granted summary judgment for an employer on an interference claim where the termination was unrelated to the plaintiff's request for FMLA leave. In support of summary judgment, the employer submitted a sworn affidavit stating that the plaintiff was terminated because of her consistent violations of the attendance/tardiness policy and that she would have been terminated regardless of her request for leave. *Id.* at *4.

As in *Bones*, the plaintiff in *Spoon* offered no evidence, other than her own speculation, to contradict the employer's evidence supporting the reason for her termination. *Id.* The record also reflected that the plaintiff had a history of tardiness and was warned in advance of her requests for FMLA leave that her behavior was in violation of the policy. *Id.* Judge Heaton ruled: "As plaintiff was terminated because she failed to comply with the attendance/tardiness policy and she would have been terminated regardless of her request for FMLA leave, her FMLA claims cannot survive summary judgment." *Id.*

### C. Plaintiff's Termination Was Unrelated to Any Exercise of FMLA Rights.

Citing her absences on March 24th through March 27th and her termination on March 30th of 2015, Plaintiff alleges Balon interfered with her FMLA rights by: "(1)

Failing to advise Plaintiff of eligibility to take FMLA leave within 5 days of knowledge of possible FMLA qualifying reasons; (2) Failing to "inquire further of the employee or the spokesperson to ascertain whether leave is potentially FMLA-qualifying; (3) Failing to engage in discussions with Plaintiff concerning FMLA qualified leave and documenting a coverage decision; (4) Failing recordkeeping requirements under the FMLA; and (5) Failing to conditionally designate absences as FMLA leave." (Complaint, ¶¶ 4.4-4.8, 5.4(a)-(e), at pp. 4-5). These contentions are without merit and fail to establish an actionable interference claim.

In contrast, the undisputed material facts establish that Balon made its decision to terminate Plaintiff's employment **before** Plaintiff had a potential need for FMLA leave. (Undisputed Material Fact ("UMF" Nos. 15, 19). Plaintiff admitted that at no time during January 1, 2015, up through March 23, 2015, did Plaintiff request any form of leave or seek medical treatment for a serious health condition. (Howard depo., 129/22-130/17, Ex. "2"). Plaintiff also admitted that she did not request a leave of absence due to her own serious health condition at any time while she was employed at Balon. (Howard depo., 130/18-131/1, Ex. "2"). Undisputed evidence also establishes that Plaintiff had a history of productivity and attendance issues and had been previously warned that her failure to improve in these areas could lead to termination. (UMF Nos. 10-12).

Specifically, on February 6, 2015, Siderits met with Plaintiff and informed her that she had not received a raise during recent evaluations due to numerous incidents of her being away from her machine during production hours. (UMF No. 10). Plaintiff was

15

reminded of the Company's expectation that she remain actively working during production hours. Plaintiff was also advised that her attendance had become an issue again. Plaintiff was advised that she would be evaluated in the near future and the Company expected her to improve in these areas and not go backwards. (*Id.*).

Siderits testified that it was her normal practice when multiple write-ups and warnings do not work, to sit down with the employee and explain that they will be under a review period and their employment status will be re-reviewed, which is typically a last-straw event. (Siderits depo., 19/25-20/12, Ex. 5). Siderits met with the owners six weeks later during the weekly Human Resources meeting on March 23, 2015, to review Plaintiff's personnel file and discuss her employment status. (UMF No. 15).

As in *Bones* and *Spoon*, Plaintiff's file reflected that she had been disciplined and warned in the past about improving her productivity and her attendance. (UMF No. UMF Nos. 10-12). Plaintiff was disciplined for productivity issues on November 14, 2014, and advised on February 6, 2015, to improve in the areas of productivity and attendance. (UMF Nos. 10 and 12). Despite the February 6th discussion, Plaintiff incurred four (4) unexcused absences and three (3) early outs between February 6th and March 23rd. (UMF No. 13). Based on Plaintiff's lack of improvement in these areas, Siderits recommended that Plaintiff's employment be terminated at the March 23rd meeting and the Balon owners both agreed that termination was warranted. (UMF No. 15).

There is no requirement in the FMLA or its implementing regulations that obligated Balon to rescind the decision to terminate Plaintiff's employment made on March 23rd because Plaintiff **subsequently** reported absences which **may** have qualified

for FMLA. The authorities cited above make clear the FMLA does not grant Plaintiff any form of protections against termination for reasons unrelated to her need for FMLA leave. *See Gunnell*, 152 F.3d at 1262 (citing 29 C.F.R. § 825.216(a)). This is particularly true where the persons who participated in the decision to terminate Plaintiff's employment had no knowledge that Plaintiff's March 24th through the 27th absences may have qualified for FMLA leave until well after Plaintiff had been notified of her termination on March 30, 2015. (UMF Nos. 20-22).

In sum, undisputed evidence establishes that Balon's decision to terminate Plaintiff's employment was made before Plaintiff had a potential need for FMLA leave. Accordingly, that decision is unrelated to any exercise of Plaintiff's FMLA rights and precludes Plaintiff from establishing an actionable FMLA interference claim as a matter of law.

## IV. PLAINTIFF CANNOT ESTABLISH AN ACTIONABLE FMLA RETALIATION CLAIM.

### A. Retaliation Claim Burden of Proof.

FMLA Retaliation claims are subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Metzler*, 464 F.3d at 1170 (citing *Doebele v. Sprint/United Mgmt. Co.,* 342 F.3d 1117, 1135 (10th Cir. 2003)). Under this analysis, Plaintiff bears the initial burden of establishing a prima facie case. *Id.* If Plaintiff does so, Defendant must offer a legitimate, non-retaliatory reason for the adverse action. *Id.* Plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual. *Id.;*

*see Gunnell,* 152 F.3d at 1263 (explaining that a plaintiff has the ultimate burden of demonstrating that the challenged employment decision was the result of intentional retaliation).

To establish a prima facie case of FMLA retaliation, Plaintiff must show that: (1) she engaged in a protected activity; (2) Defendant took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action. *Metzler*, 464 F.3d at 1171 (citing *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)).

### B. Plaintiff Had Not Engaged in Protected Activity When Defendant Made the Decision to Terminate Her Employment.

Plaintiff alleges Balon retaliated against her under the FMLA by "[t]erminating Plaintiff's employment upon return from FMLA qualified leave and by failing to rehire or reinstate Plaintiff to her position with all benefits." (Complaint, ¶ 5.4(f), at p. 5). This contention is without merit and fails to establish an actionable retaliation claim.

Courts construing FMLA retaliation claims have made clear that to establish the first element of her prima facie case, the employee must establish that he or she provided "notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave." *Ney v. City of Hoisington, Kansas*, 264 F. App'x 678, 682 (10th Cir. 2008) (unpublished) (quoting 29 C.F.R. § 825.302(c)). The Court explained that the "mere use of sick leave does not implicate the FMLA;" or establish that the employee engaged in any form of protected activity. *Id.*

In this case, undisputed evidence establishes that Balon made the decision to terminate Plaintiff's employment on March 23, 2015.  (UMF No. 15).  Plaintiff admits she did not have a need for FMLA leave at any time in 2015 prior to that date and had not previously requested any form of FMLA leave.  (Howard depo., 129/22-131/1, Ex. 2).  Although Balon did not notify Plaintiff of her termination until she returned to work on March 30th, undisputed evidence establishes that Siderits and Kyte did not see Plaintiff's doctor's notes taking her off of work from March 24th through March 27th until after March 30, 2015.  (UMF Nos. 20-22).

Siderits was aware Plaintiff was calling in sick on those days based on the information provided on the daily attendance log.  (Siderits depo., 80/9-20, Ex. 5).  However, as in *Ney*, the information on the attendance log only indicated that Plaintiff was calling in sick each day.  That information did not provide Balon sufficient evidence of a need for FMLA-qualifying leave.  (*See* Plaintiff Attendance Log, Ex. 2).  Additionally, Siderits waited to communicate that decision to Plaintiff until March 30th, merely out of respect for Plaintiff and so that she could communicate the decision face-to-face.  (UMF No. 21).

In sum, undisputed evidence establishes that Plaintiff did not engage in any form of protected activity at any time prior to the date Balon made the decision to terminate her employment.  Accordingly, Plaintiff cannot establish the first element of her prima facie case and summary judgment on the retaliation claim is warranted.

### C. **Plaintiff Cannot Establish a Causal Connection Between Her Exercise of FMLA Rights and Her Termination.**

Even if Plaintiff could establish that she engaged in protected activity, she cannot establish a causal connection between her exercise of FMLA rights and her termination. In *Sabourin v. University of Utah*, 676 F.3d 950 (10th Cir. 2012), the Tenth Circuit held that where the evidence establishes the plaintiff's termination is not related to the exercise or attempted exercise of FMLA rights, the plaintiff cannot establish an FMLA retaliation claim. *Id.* at 959.  The Court held:

> [T]here is no genuine issue that the reduction in force was wholly independent of Mr. Sabourin's request for FMLA leave.  His interference claim fails because the reduction in force was not "related to the exercise or attempted exercise of his FMLA rights."
>
> Likewise, the reduction in force cannot support an FMLA retaliation claim because there is no genuine issue that there was no "causal connection between the protected activity [the request for FMLA leave] and the adverse action [the reduction in force]."

*Id.* (quoting *Metzler*, 464 F.3d at 1171 and 1180) (internal citations omitted) (alterations in original).   Accordingly, the Tenth Circuit affirmed summary judgment for the employer.  *Sanbourin*, 676 F.3d at 962.

In this case, undisputed evidence establishes that Plaintiff's termination on March 23, 2015, was completely unrelated to her subsequent, potential need for FMLA leave, which did not occur until March 24th through March 27th.  (*See* Proposition III, above). For the same reasons, Plaintiff cannot establish a causal connection between Balon's decision to terminate her employment and her subsequent, potential need for FMLA leave.   Accordingly, Plaintiff cannot establish the third element of her prima facie case

on the retaliation claim.

### D. Defendant Has Asserted a Non-Discriminatory Reason for Plaintiff's Termination and She Cannot Establish Pretext.

In offering a legitimate, non-discriminatory reason for its actions, Defendant is only required to "assert a nonretaliatory motive" for its termination decision. *Sabourin*, 676 F.3d at 962. In this jurisdiction, courts have consistently held that an employee's termination for poor job performance or failing to follow the employer's policies and procedures constitutes a non-discriminatory or non-retaliatory reason for adverse employment action. *See Metzler*, 464 F.3d at 1172 ("FHLB asserts that it fired Metzler due to her poor performance, poor attitude, and failure to maintain adequate job related skills. Because these reasons are not facially prohibited, the district court correctly concluded that FHLB articulated a legitimate, nonretaliatory reason for terminating Metzler's employment."); *Peterson v. Exide Technologies*, 477 F. App'x 474, 477 (10th Cir. 2012) (unpublished) ("Defendant has adequately demonstrated a nonretaliatory reason for Plaintiff's termination: his repeated safety violations.").

Here, the record establishes that Balon terminated Plaintiff's employment for failing to improve in the areas of productivity and attendance. (UMF Nos. 10-13, and 15). Even if Plaintiff could establish a prima facie case of retaliation (which she cannot), because this constitutes a legitimate non-retaliatory reason, Plaintiff can only withstand summary judgment by proving Balon's stated reason for her termination is pretextual.

To meet this burden, Plaintiff must show "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradiction in the employer's proffered legitimate

reasons for its actions [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951-52 (3rd Cir. 1996)) (additional citation omitted). In evaluating pretext, the court is required "to examine the facts as they appear to the person making the decision, to determine whether the employer honestly believed those reasons and acted in good faith upon those beliefs." *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1220 (10th Cir. 2007) (quotation omitted). Although courts "must to resolve all doubts in [the employee's] favor, **mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgement**." *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1225 (10th Cir. 2007) (citation omitted) (emphasis added).

In evaluating pretext in the *Metzler* case, the Tenth Circuit recognized that it was "undisputed that [the defendant] discharged [the plaintiff] **during her FMLA leave**." *Metzler*, 464 F.3d at 1172 (emphasis added). The Court held that although temporal proximity is one relevant factor to be considered by the courts in determining pretext, "this court 'refused to allow even 'very close' temporal proximity to operate as a proxy for th[e] evidentiary requirement' that the plaintiff demonstrate pretext." *Id.* (quoting *Annett v. University of Kan.*, 371 F.3d 1233, 1241 (10th Cir. 2004)) (additional citations omitted). The Court held that to raise a fact issue of pretext, the plaintiff must "present evidence of temporal proximity *plus* circumstantial evidence of retaliatory motive." *Id.* In this case, the evidence establishes that Balon's decision to terminate Plaintiff occurred

**before** she incurred any absences which may have qualified for FMLA leave.   (UMF Nos. 15, 17-19).

Siderits brought Plaintiff's file to the March 23rd meeting because six (6) weeks had passed since Siderits' meeting with Plaintiff, where she was advised of why she had not received a pay increase and that she needed to improve in the areas of productivity and attendance.   (UMF Nos. 10, 15).   Since that meeting, Plaintiff incurred four (4) unexcused absences and three (3) early outs.   (UMF No. 13).   Finding that Plaintiff had failed to show improvement, the owners of the Company made the decision to terminate Plaintiff's employment on March 23rd.   (UMF No. 15).   Accordingly, there is no temporal proximity between Balon's decision to terminate Plaintiff's employment on March 23rd and her potential need for FMLA leave on March 24th through March 27th.

Although Plaintiff was not notified of the termination decision until March 30th, there is no evidence that the persons who made the decision to terminate Plaintiff's employment had any knowledge that Plaintiff's absences on March 24th through March 27th may have qualified for FMLA leave.   Even if they did, Balon was not obligated to rescind its prior termination decision because Plaintiff subsequently incurred absences which may have qualified for FMLA leave.

In sum, there is no evidence of a temporal proximity between Balon's decision to terminate Plaintiff's employment on March 23rd, and Plaintiff's subsequent, potential need for FMLA.   There is also no circumstantial evidence of a retaliatory motive on the part of Balon.   Undisputed evidence establishes that Balon has been in business for over fifty (50) years and regularly grants leaves designated as FMLA to its employees.

23

Specifically, Balon's records reflect that employees received FMLA designated leave 230 times since January 1, 2013.  (UMF No. 9).[1]  Because Siderits and the owners had a good faith basis to terminate Plaintiff's employment on March 23, 2015, based on Plaintiff's history of productivity and attendance problems, Plaintiff cannot establish that the Company's reasons for her termination are pretextual.

## CONCLUSION

For the reasons stated above, Defendant, Balon Corporation, is entitled to summary judgment on all claims asserted by Plaintiff, Loraine Howard.

Respectfully submitted,

s/ Jefferson I. Rust
JEFFERSON I. RUST, OBA #16722
KELLY J. KRESS, OBA #30771
TOMLINSON · RUST · MCKINSTRY · GRABLE
Two Leadership Square, Suite 450
211 N. Robinson Ave.
Oklahoma City, OK 73102
(405) 606-3350 Telephone
(866) 633-6162 Facsimile
jeffr@trmglaw.com
kellyk@trmglaw.com
**Attorneys for Defendant**

---

[1]    In addition to the number of leaves granted, other than this lawsuit Balon has received only one (1) other complaint alleging a violation of the FMLA.  In that case, the FMLA claim was simply an add-on argument and the lawsuit was without merit and was dismissed in the early stages of litigation without any finding of liability or wrongdoing and without any payment to the plaintiff.  (Kyte Affidavit, ¶ 6, Ex. 1) (*See Escobeda v. Balon Corporation,* Western District of Oklahoma, CIV-11-428-D).  These statistics refute any allegation or inference that Balon harbors any animus towards employees who request or take FMLA leave.

## CERTIFICATE OF SERVICE

I hereby certify that on <u>March 18, 2016</u>, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants.

Jeff A. Taylor, OBA #17210:  [taylorjeff@mac.com](mailto:taylorjeff@mac.com)
*Attorneys for Plaintiff*

*s/Jefferson I. Rust.*
JEFFERSON I. RUST
Respectfully submitted,
