IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

LORAINE HOWARD,                )
                               )
         Plaintiff,            )
                               )
vs.                            )   Case No. CIV-15-737-D
                               )
BALON CORPORATION,             )
                               )
         Defendant.            )

# **O R D E R**

Before the Court are motions for summary judgment filed by Plaintiff Loraine Howard [Doc. No. 17] and Defendant Balon Corporation [Doc. No. 16] pursuant to Fed. R. Civ. P. 56. Plaintiff moves for partial summary judgment on the issue of Defendant's liability for allegedly terminating her employment in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq*. Defendant moves for a judgment in its favor on all claims. Each party has filed a timely response to the other's motion, and both motions are fully briefed.[1]

## **Standard of Decision**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the

---

[1] Only Defendant filed a reply brief [Doc. No. 22] in further support of its motion as authorized by LCvR7.1(i). Plaintiff instead filed motions to strike certain exhibits submitted by Defendant, arguing that the exhibits are improper summary judgment materials. After those motions were fully briefed, they were denied by the Court. *See* 11/30/16 Order [Doc. No. 27]. Defendant also filed a Notice of Supplemental Authority [Doc. No. 28], to which Plaintiff was allowed a response [Doc. No. 31].

suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.* If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251-52.

## Statement of Undisputed Facts [2]

Defendant is a family-owned corporation that operates a manufacturing business in Oklahoma City, Oklahoma, and employs more than 900 employees. Defendant hired Plaintiff as a machine operator in May 2008, and she worked in that position until March 2015. Defendant had a written attendance policy that was provided to employees (including Plaintiff) upon employment; it required employees to call a dedicated telephone line to report work absences or lateness for work. Employees were responsible to clock in and clock out each work day for the core hours of 8:00 a.m. to 4:30 p.m., to report back on time after a work break or lunch period, and to use accrued vacation time for absences. Plaintiff accrued 120 hours of paid vacation annually on her anniversary date. Accrued vacation time could be used for any reason designated by the employee, including sickness, if requested in a timely manner.

Defendant maintained a written FMLA policy that summarized employees' rights. Statutorily required notices were posted near two human resources (HR) offices in Defendant's facility, and a summary of FMLA policies and procedures was on display in an employee break area. Defendant's HR representative, Holly Siderits, testified regarding the procedures used to implement FMLA leave requirements. These included initiating a discussion of leave rights with an employee who was absent from work for more than three days for medical care, even without an FMLA leave request by the employee.

---

[2] This statement includes material facts that are properly supported by the asserting party and not opposed in the manner required by Rule 56(c).

During the course of Plaintiff's employment by Defendant, she received verbal and written warnings about attendance and productivity issues.[3] Defendant's concerns were documented in an employee activity report regarding Plaintiff that, as to productivity, noted instances when Plaintiff was away from her machine during work hours. On February 6, 2015, Ms. Siderits met with Plaintiff to discuss Plaintiff's concern that she had not received a pay raise during employee reviews conducted in December 2014. Although Plaintiff disagrees with Ms. Siderits' account of the details of their discussion, Plaintiff admits they discussed Plaintiff's absences from her machine during production hours, that Ms. Siderits encouraged Plaintiff to improve her work habits, and that Ms. Siderits stated Plaintiff would be reevaluated. Ms. Siderits also counseled Plaintiff about her attendance.

As of July 15, 2014, Plaintiff had exhausted all 120 hours of paid vacation time accrued on her anniversary date in May 2014.[4] Thus, Plaintiff had no vacation time available for subsequent absences (including late arrivals or early departures from work)

---

[3] Although Defendant has a general policy of progressive discipline, the owners retain discretion to determine whether (or when) an employee who has received multiple warnings should be terminated.

[4] Plaintiff attempts to dispute this fact by contending it is not supported by the referenced exhibit; Defendant initially provided only an excerpt of Plaintiff's employee attendance report covering a time period from June 30, 2014, to her termination date. *See* Def.'s Ex. 8 [Doc. No. 16-8]. With its reply brief, however, Defendant submitted the complete attendance report for Plaintiff's entire period of employment and an affidavit of Ms. Siderits that provided a foundation for and explanation of the report. *See* Def.'s Reply Br., Exs. 1 & 2 [Doc. Nos. 22-1 and 22-2]. Plaintiff moved unsuccessfully to strike these exhibits. *See supra* note 1. At no time has Plaintiff asked to make another response or to rebut Defendant's additional materials. Therefore, they can properly be considered. *See Jencks v. Modern Woodmen*, 479 F.3d 1261, 1269 (10th Cir. 2007).

until her next anniversary date in May 2015.[5] Following Plaintiff's meeting with Ms. Siderits in February 2015, Plaintiff incurred numerous additional absences from work.

On Monday, March 23, 2015, six weeks after Plaintiff's meeting with Ms. Siderits, a weekly HR/management meeting was held with Defendant's owners, its vice president and general counsel (Donald J. Kyte), Ms. Siderits, and others in attendance. Ms. Siderits brought Plaintiff's personnel file to the meeting for an employee review and discussion of Plaintiff's request for a wage increase. After discussion at the meeting, upon Ms. Siderits' recommendation, the owners decided to terminate Plaintiff's employment due to lack of improvement, subject to Mr. Kyte's review of Plaintiff's file and approval of the decision. Following the meeting, Mr. Kyte conducted his review, formed an opinion that there was a sufficient basis for termination, and communicated to HR the same day that he had no objection to the decision.[6]

The following day, Ms. Siderits prepared a form to be used to terminate Plaintiff's employment on March 24, 2015, but Plaintiff called in sick that day and was absent from work. On each subsequent day until March 30, 2015, Ms. Siderits revised the form by inserting the current day's date, but Plaintiff remained absent from work until the following

---

[5] A review of Plaintiff's attendance record [Doc. No. 22-2] shows that she engaged in a similar pattern of conduct each year beginning in May 2011, exhausting all paid vacation time within two or three months of her anniversary date and then incurring additional absences throughout the year.

[6] Plaintiff attempts to dispute these facts by pointing out that Defendant has no documentary evidence to support them. No minutes of the March 23 meeting were kept; no contemporaneous note of the termination decision was made; and Mr. Kyte communicated his approval by a "sticky note" on the file that was not retained. However, these facts are supported by the affidavits and deposition testimony of Ms. Siderits and Mr. Kyte, and are unopposed by any other evidence of record.

Monday, March 30. On that date, after Plaintiff had worked part of her shift, Ms. Siderits met with Plaintiff and informed her of the termination decision.[7] The effective date of Plaintiff's termination for purposes of employee benefits was March 30, 2015.

On each day that Plaintiff was absent from work March 24-27, 2015, she called in pursuant to Defendant's attendance policy, and reported an absence due to sickness and on one day a doctor's appointment. On March 24, Plaintiff received medical treatment for back pain, and a doctor determined that she was unable to return to work until March 26, 2016. Plaintiff returned to the doctor on March 26, and was directed to remain off work until March 30, 2015. The doctor's notes regarding Plaintiff's work restrictions were delivered to Defendant on March 27, 2015, but were not seen by Ms. Siderits or Mr. Kyte until sometime after Plaintiff's termination.

In the Complaint, Plaintiff claims that Defendant interfered with her exercise or attempted exercise of an FMLA right to medical leave for a serious health condition, in violation of 29 U.S.C. § 2615(a)(1). Although not entirely clear from her pleading, Plaintiff also asserts a claim that Defendant retaliated against her for exercising a right to FMLA leave by terminating her employment, in violation of 29 U.S.C. § 2615(a)(2). By her Motion, Plaintiff seeks a determination as a matter of law that Defendant is liable for damages under both theories of recovery. By its Motion, Defendant seeks summary judgment in its favor on both claims.

---

[7] Plaintiff again attempts to dispute these facts because they are not supported by documentary evidence. The only termination form is dated March 30, 2015; Ms. Siderits did not keep prior versions. Again, however, these facts are supported by Ms. Siderits' testimony and unopposed by any other evidence.

**Discussion**

The Tenth Circuit has recognized two types of FMLA claims under 29 U.S.C. § 2615(a): "'an entitlement or interference theory arising from § 2615(a)(1), and a retaliation or discrimination theory arising from § 2615(a)(2).'" *Dalpiaz v. Carbon County*, 760 F.3d 1126, 1131 (10th Cir. 2014) (quoting *Metzler v. Fed. Home Loan Bank*, 464 F.3d 1164, 1170 (10th Cir. 2006)). "These two theories of recovery are separate and distinct theories that 'require different showings[,] differ with respect to the burden of proof,' and 'differ with respect to the timing of the adverse action.'" *Id.* (quoting *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007)).

**A.  Interference Claim**

The law governing Plaintiff's claim that Defendant interfered with her exercise of an FMLA right is well settled:

> To establish a claim of FMLA interference under § 2615(a)(1), an employee must show "(1) that she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights." *Campbell*, 478 F.3d at 1287 (internal quotation marks and brackets omitted). To satisfy the second element of an interference claim – adverse action interfering with the right to take FMLA leave – "the employee must show that she was prevented from taking the full 12 weeks[] of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." *Id.* Thus, an interference claim arises when an adverse employment decision is made before the employee has been allowed to take FMLA leave or while the employee is still on FMLA leave. *Id.*

*Dalpiaz*, 760 F.3d at 1132 (footnote omitted) (quoting *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007)). "The interference or entitlement theory is derived from the FMLA's creation of substantive rights. If an employer interferes with the

FMLA-created right to medical leave or to reinstatement following the leave, a deprivation of this right is a violation regardless of the employer's intent." *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002). Thus, "[i]f the employee can demonstrate that the first two elements of interference are satisfied, the employer then bears the burden of demonstrating that the adverse decision was not 'related to the exercise or attempted exercise of [the employee's] FMLA rights.'" *Dalpiaz*, 760 F.3d at 1132. (quoting *Campbell*, 478 F.3d at 1287). An interference claim fails as a matter of law where the employer "successfully establish[es] that [the employee] would have been dismissed regardless of her request for an FMLA leave." *Id.* at 1133.

In this case, the parties assume in their arguments that Plaintiff can establish the existence of a serious health condition that would qualify for FMLA protection during her absence from work on March 24-27, 2015. A "serious health condition" under FMLA is "an illness, injury, impairment, or physical condition that involves . . . continuing treatment by a health care provider.'" *See* 29 U.S.C. § 2611(11). This includes "[a] period of incapacity of more than three consecutive, full calendar days . . . that also involves: (1) Treatment two or more times . . . by a health care provider." 29 C.F.R. § 825.115(a)(1). It is undisputed that Plaintiff was absent from work for more than three days and she received continuing medical treatment for an illness during this time. Although an employee's entitlement to FMLA-protected leave requires sufficient notice to the employer, Plaintiff has presented minimally sufficient facts from which to infer that she

provided notice of a request for medical leave.[8] As to the second element of Plaintiff's interference claim, the termination of her employment upon returning from FMLA-qualified leave could constitute an adverse action that interfered with her right to leave or reinstatement following leave. Thus, the question presented with respect to Plaintiff's interference claim is whether Defendant has established that its action was unrelated to Plaintiff's exercise of a right to FMLA leave.

For the reasons discussed *infra*, the Court finds that the answer to this question is unequivocally "yes." Defendant has presented undisputed evidence that the decision to terminate Plaintiff's employment was made on March 23, 2015, before her four-day period of medical absence began. Therefore, the Court finds that Plaintiff has failed to demonstrate a genuine dispute of material fact regarding her interference claim and that Defendant is entitled to summary judgment on this claim.

**B.    Retaliation Claim**

"Retaliation claims under the FMLA are subject to the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Metzler v. Fed. Home Loan Bank*, 464 F.3d 1164, 1170 (10th Cir. 2006). "To make out a prima facie retaliation claim, [a plaintiff] must show that: '(1) she engaged in a protected activity; (2) [the employer] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the

---

[8] *See Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 997 (10th Cir. 2001) (FMLA does not require "a covered employee to specifically ask for FMLA benefits. An employee need not expressly assert rights under the FMLA or even mention the FMLA.") (citations omitted).

protected activity and the adverse action.'" *Campbell*, 478 F.3d at 1287 (quoting *Metzler*, 464 F.3d at 1171). With regard to the third element, the Tenth Circuit "ha[s] repeatedly recognized temporal proximity between protected conduct and termination as relevant evidence of a causal connection sufficient to justify an inference of retaliatory motive." *Metzler*, 464 F.3d at 1171 (internal quotation omitted). If a *prima facie* case is established, "the defendant must offer a legitimate non-retaliatory reason for the employment action," and "[t]he plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." *Metzler*, 464 F.3d at 1170; *Campbell*, 478 F.3d at 1290.

Plaintiff's theory of proof with regard to her retaliation claim is that her work absence from March 24-27, 2015, qualified as FMLA-protected leave and so she engaged in protected activity by taking such leave; that Defendant terminated her employment on the same day she returned to work; and that the close proximity between her protected conduct and her termination is sufficient to show a causal connection. Defendant asserts that the decision to terminate Plaintiff's employment was made before any serious health condition or FMLA-protected absence occurred, and thus Plaintiff cannot show either that she had engaged in protected activity before the termination decision or that there was a causal connection between her absence and her termination. Further, assuming a *prima facie* case could be established, Defendant asserts that Plaintiff lacks any evidence to undermine its non-retaliatory reason for terminating her employment.

Viewed as either a failure of Plaintiff's *prima facie* case or an inability to establish pretext, the Court finds for the reasons discussed *infra* that Plaintiff has failed to

demonstrate a genuine dispute of material fact regarding her retaliation claim. Therefore, Defendant is entitled to summary judgment on this claim.

C. **Defendant's Proof of the Termination Decision**

The key to Defendant's defense of this case is evidence that it had decided to terminate Plaintiff's employment on March 23, 2015, before any serious health condition or need for FMLA leave arose. Plaintiff contends Defendant's position of "delayed notice of termination" is "very handy" but is "implausible" and lacks "credible support," and so does not warrant summary judgment in Defendant's favor. *See* Pl.'s Mot. Partial Summ. J. [Doc. No. 17] at 11; Pl.'s Resp. Br. [Doc. No. 19] at 11-12 (ECF numbering). In Plaintiff's view, it is simply unbelievable that a discussion of her request for a pay raise resulted in a decision to terminate her employment (without prior warning), particularly in view of the fact that Defendant cannot produce any documentary evidence to show the decision was made on March 23. *See supra* notes 5 & 6.

Plaintiff's credibility argument is unavailing under the circumstances of this case. On the summary judgment record presented, the Court's determination that there is no triable issue of fact does not involve an assessment of the credibility of Defendant's witnesses but simply recognizes a lack of any affirmative evidence to contradict their testimony. In opposing summary judgment, Plaintiff must do more than merely assert that a jury might disbelieve the testimony of Defendant's witnesses; she must offer evidence to rebut their testimony. *See Helget v. City of Hays*, 844 F.3d 1216, 1223 n.3 (10th Cir. 2017); *see also Nat'l Am. Ins. Co. v. Am. Re-Ins. Co.*, 358 F.3d 736, 742 (10th Cir. 2004). "Standing alone, attacks on the credibility of evidence offered by a summary judgment

movant do not warrant denial of a summary judgment motion." *Nat'l Am. Ins. Co.*, 358 F.3d at 742. A district court "when evaluating a motion for summary judgment . . . must determine whether the nonmovant offered any specific facts that demonstrate the existence of a material fact to be tried." *Id.* Here, Plaintiff has not done so.

Further, a district court's role in employment cases "isn't to ask whether the employer's decision was wise, fair or correct, but whether it honestly believed the legitimate, nondiscriminatory reasons it gave for its conduct and acted in good faith on those beliefs." *DeWitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017) (internal quotation omitted). "'Evidence that the employer should not have made the termination decision – for example, that the employer was mistaken or used poor business judgment – is not sufficient to show that the employer's explanation is unworthy of credibility.'" *Id*. (quoting *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 948 (10th Cir. 2011). Plaintiff's fairness arguments – untethered to any evidence of a causal connection between Defendant's termination decision and her medical absence from work – are insufficient to call Defendant's decision into doubt.

**Conclusion**

For these reasons, the Court finds that Plaintiff is not entitled to summary judgment regarding Defendant's liability on either her FMLA interference or retaliation claims and, instead, that Defendant is entitled to summary judgment on both claims.

IT IS THEREFORE ORDERED that Defendant Balon Corporation's Motion for Summary Judgment [Doc. No. 16] is GRANTED and Plaintiff Loraine Howard's Motion

for Partial Summary Judgment [Doc. No. 17] is DENIED.  A judgment shall be entered accordingly.

IT IS SO ORDERED this 31st day of March, 2017.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE